**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EAST COAST STORAGE EQUIPMENT CO., INC., | |
| Plaintiff, | Civil Action No. 20-12414 (FLW) |
| v. | **OPINION** |
| ZF TRANSMISSIONS GRAY COURT, LLC; ZF NORTH AMERICA, INC.; THS CONSTRUCTORS, INC., | |
| Defendants. | |

**WOLFSON, Chief Judge:**

Plaintiff East Coast Storage Equipment Co., Inc. ("Plaintiff" or "East Coast") brings this suit against Defendants ZF Transmissions Gray Court, LLC ("ZF Transmissions"), ZF North America, Inc. ("ZF North America") (collectively, with ZF Transmissions, the "ZF Defendants"), and THS Constructors, Inc. ("THS") (collectively, "Defendants"), asserting claims for breach of contract, violation of New Jersey's Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, *et seq.*, violation of New Jersey's Prompt Payment Act ("Prompt Payment Act"), N.J.S.A. 2A:30A-1, *et seq.*, and various other state law claims. Specifically, this case arises out of the expansion of the ZF Defendants' automated storage and retrieval system ("ASRS" or "racking system") at its facility in Gray Court, South Carolina. Defendants removed the case from state court pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441 on the basis of diversity jurisdiction.

Presently before the Court are three separate motions. First, THS moves to dismiss the Complaint for lack of personal and subject matter jurisdiction. Next, the ZF Defendants move to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P.12(b)(6) and to transfer

venue pursuant to 28 U.S.C. § 1404(a).  And third, Plaintiff cross-moves for summary judgment against Defendants.  For the reasons set forth below, this Court lacks personal jurisdiction over THS, and in lieu of dismissal, this matter is transferred to the United States District Court for the District of South Carolina, pursuant to 28 U.S.C. § 1631 and § 1404(a).  The ZF Defendants' Motion to Dismiss and Plaintiff's Motion for Summary Judgment are **DENIED** without prejudice, with the right to refile such motions in the transferee court.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual allegations are taken from the Complaint and are accepted as true for the purpose of Defendants' Motions to Dismiss.  (ECF No. 1, Ex. A ("Compl.").)

Plaintiff is a manufacturer, custom fabricator, erector, installer, and distributor of ASRS. Plaintiff alleges that in March 2017, it was contacted by a representative of the ZF Defendants regarding Plaintiff's ability to produce specialized engineering drawings in connection with the expansion of the ZF Defendants' existing ASRS at its facility in South Carolina (the "Project"). (*Id.* at ¶¶ 12-13.)  According to Plaintiff, the ZF Defendants asked Plaintiff to collaborate with their architect on the design of the ASRS, and invited Plaintiff to a "kick off meeting" at the ZF Defendants' facility in South Carolina.  (*Id.* at ¶¶ 13-15.)  Following the meeting, Plaintiff alleges that, among other things, it was asked to provide "detailed drawings for racking, including all loads, dimensions and interfaces with the building to be included into final civil drawings" for the ASRS expansion.  (*Id.* at ¶¶ 16-17.)  Plaintiff further alleges that the parties agreed that any contractors bidding on the prime contract "need to include East Coast . . . as one of the subsuppliers to quote the racking system."  (*Id.* at ¶ 17.)

Plaintiff alleges that on May 5, 2017, it "delivered the plans that the ZF Defendants used to publish" their request for quotation ("RFQ") to potential prime contractors.  (*Id.* at ¶¶ 18-27.) Plaintiff also avers that the ZF Defendants informed all bidders in the RFQ that "East Coast was

pre-selected to design, fabricate, construct, and install the ASRS system, and required all prime contract bidders to include East Coast as its subcontractor for the design, manufacturing, and installation of the ASRS system," but that the RFQ allowed bidders to propose alternative subcontractors.  (*Id.* at ¶ 28.)

In response to the RFQ, THS allegedly submitted a bid to serve as the prime contractor on the Project.  (*Id.* at ¶ 29.)  Prior to submitting its final bid, however, THS sought permission from the ZF Defendants to substitute another subcontractor in place of Plaintiff.  (*Id.*)  Plaintiff alleges that the ZF Defendants denied this request, and Plaintiff submitted a proposal to THS to serve as its subcontractor.  (*Id.* at ¶¶ 29-30.)

Thereafter, the ZF Defendants awarded THS the prime contract, which was executed on June 18, 2017.  (*Id.* at ¶ 32.)  According to Plaintiff, however, after execution, THS falsely represented to the ZF Defendants that Plaintiff was not properly licensed to design, fabricate, and/or construct an ASRS in South Carolina.  Specifically, Plaintiff alleges that no such license requirement exists.  (*Id.*)  Relying on this allegedly false information, Plaintiff claims that the ZF Defendants permitted amendment of the prime contract so THS could select a new subcontractor, Engineered Products, LLC, in place of Plaintiff.  (*Id.* at ¶ 33.)  Regardless of the amendment, however, Plaintiff alleges that it executed a subcontract with THS ("THS Subcontract") on August 4, 2017.  (*Id.* at ¶¶ 33, 42.)  Under the Subcontract, upon execution, THS was to pay Plaintiff $340,000.  (*Id.* at ¶¶ 36, 42.)  Plaintiff alleges that payment was not timely received, and shortly thereafter, THS advised Plaintiff that the ZF Defendants were "reevaluating how [they] wish[] to proceed with this project" and that Plaintiff was to refrain from any work on the Project.  (*Id.* at ¶ 49.)  Plaintiff then allegedly contacted the ZF Defendants, who advised Plaintiff that they would

refrain from being involved in the contractual dispute. (*Id.* at ¶¶ 50-51.) Thereafter, on September 11, 2017, THS informed Plaintiff that it had terminated the THS Subcontract. (*Id.* at ¶ 54.)

On August 3, 2020, Plaintiff filed its Complaint in the Superior Court of New Jersey, Ocean County, asserting twelve causes of action: breach of contract against the ZF Defendants (Count I); promissory estoppel against the ZF Defendants (Count II); unjust enrichment against Defendants (Count III); quantum meruit against the ZF Defendants (Count IV); account stated against Defendants (Count V); violation of the NJCFA against Defendants (Count VI); conversion against Defendants (Count VII); fraud against THS (Count VIII); violation of the Prompt Payment Act against Defendants (Count IX); breach of the implied covenant of good faith and fair dealing against Defendants (Count X); tortious interference with a prospective economic benefit against THS (Count XI); and trade libel against THS (Count XII). (*See*, *e.g.*, Compl.)

On September 8, 2020, Defendants filed a Notice of Removal with this Court on the basis of diversity jurisdiction. (*See* ECF No. 1, Notice of Removal.)

Several weeks thereafter, on September 29, 2020, THS moved to dismiss the Complaint for lack of personal and subject matter jurisdiction, and the ZF Defendants moved to dismiss Counts I, III, V-VIII, and IX-X of the Complaint and transfer the remaining claims to the District of South Carolina. (ECF Nos. 9 and 14.) In response, Plaintiff filed its cross-motion for summary judgment in opposition to Defendants' motions to dismiss and transfer on October 17, 2020. (ECF No. 18.)

## II. <u>LEGAL STANDARDS</u>

### A. Fed. R. Civ. P. 12(b)(2)

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004)

(citing Fed. R. Civ. P. 4(e)).  "[T]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted).  Thus, the central inquiry is whether the defendant has "certain minimum contacts with...[New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted).  In analyzing personal jurisdiction, the Court must determine whether it has general or specific jurisdiction over the defendant.

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc.*, 384 F.3d at 97; *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003).  Still, plaintiff "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper." *Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992)).  In the context of assessing personal jurisdiction, "[w]hile disputed issues are construed in favor of the plaintiff, allegations may be contradicted by the defendant through opposing affidavits or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" *Am. Bd. of Internal Med. v. Rushford*, No. 14-6428, 2015 WL 5164791, at *2 (D.N.J. Sept. 2, 2015) (quoting *Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990)).

**B.    Fed. R. Civ. P. 12(b)(6)**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), "courts accept all factual allegations as true, construe

the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of trust. *Id.* Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

III.   **DISCUSSION**

A.     **THS's Motion to Dismiss**

THS moves to dismiss the Complaint based on a lack of personal jurisdiction and subject matter jurisdiction.   According to THS, it has taken no action which could be construed as purposefully availing itself of the benefits of conducting business in the State of New Jersey, and that merely doing business or contracting with a New Jersey company is insufficient for specific personal jurisdiction.  Moreover, Plaintiff's claims against THS are subject to an arbitration clause, and therefore, the Court also lacks subject matter jurisdiction over the dispute.

*1. Personal Jurisdiction*

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 Fed. Appx. 32, 37-38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)).  Here, I note that Plaintiff does not identify under which theory it is asserting jurisdiction. Rather, Plaintiff appears to argue only that the Court has personal jurisdiction pursuant to "New Jersey's strong public policy considerations found in the entire controversy doctrine and PPA."[1]  Regardless which theory Plaintiff pursues, however, it cannot satisfy either jurisdictional ground.

First, general jurisdiction exists when the defendant's affiliations with the forum state are "so continuous and systematic as to render [it] essentially at home in the forum state." *Goodyear*

---

[1]     To the extent that Plaintiff argues the Court has jurisdiction over THS based solely on its PPA claim, that argument lacks merit.  While Plaintiff is correct that the PPA's language broadly applies to "all contracts for improvements of structures entered into after [September 1, 2006]," the statute does not confer jurisdiction where it otherwise does not exist.  Indeed, Plaintiff cites no case where a court found personal jurisdiction over a defendant that it otherwise would not have had simply because the claims were brought under the PPA.  In addition, although the Court need not rule on it here, I question Plaintiff's ability to even assert a cause of action under the PPA, specifically whether the PPA applies to work performed, at least in part, outside of New Jersey.

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations and quotations omitted).  General jurisdiction allows a court to assert personal jurisdiction over an out-of-court defendant when "that party can be called to answer any claim against her, regardless of whether the subject matter of the cause of action has any connection to the forum." *Mellon Bank P.S.F.S. v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).  "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted).  Indeed, when the forum is not the place of incorporation or principal place of business, "exceptional" circumstances are needed to establish general jurisdiction.  *See id.* at 139.

Here, Plaintiff does not allege that THS is incorporated or has a principal place of business in New Jersey.  Just the opposite.  Plaintiff explicitly alleges that New Jersey is neither THS's state of incorporation nor principal place of business.  (Compl. at ¶ 3.) Nor has Plaintiff alleged any facts sufficient to find that this is "an 'exceptional' case such that the place of incorporation/principal place of business rule should be disregarded." *Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 Fed.Appx. 119, 120 (3d Cir. 2017).  Indeed, Plaintiff has only alleged that "New Jersey has jurisdiction over THS under the New Jersey Prompt Pay Act […] which requires all claims brought under the PPA to be litigated in New Jersey." (Compl. at ¶ 6.)  That single allegation, standing alone, falls far short of the "continuous and systematic" affiliations with New Jersey required to find that THS is subject to general jurisdiction in New Jersey.  *See JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc.*, No. 13-4110, 2014 WL 2050267, at *3 (D.N.J. May 19, 2014) (finding that general jurisdiction was lacking, where the plaintiff "only offered evidence that shows that [the defendant] conducted some business in New Jersey ....").

8

Furthermore, THS's lack of "continuous and systematic" affiliations with New Jersey is supported by THS's Affidavit from Dana Emberton, the President and CEO of THS.  THS primarily performs work as a general contractor in South Carolina and is licensed as a general contractor in South Carolina.  As such, THS is not licensed to perform work in New Jersey, has never performed work in New Jersey, and does not maintain any offices in New Jersey.  (Affidavit of Dana Emberton in Support of THS's Motion to Dismiss ("Emberton Aff.") at ¶¶ 4-8.)  Plaintiff provides no evidence that THS owns, leases, possesses, or maintains real or personal property in New Jersey; has a mailing address or post office box in New Jersey; or has a bank account or registered agent in New Jersey.  As such, general jurisdiction is clearly lacking.

Next, specific jurisdiction exists over a non-resident defendant where the plaintiff's claim "'arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 571 U.S. at 127 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)); *see Bristol–Myers Squibb Co. v. Superior Court*, ⸺ U.S. ⸺, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'") (quoting *Goodyear*, 564 U.S. at 919).  Courts apply a three part test to determine whether specific jurisdiction over a non-resident defendant exists: "First, the defendant must have purposefully directed [its] activities at the forum.  Second, the litigation must arise out of or relate to at least one of those activities.  And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *Petrucelli v. Rusin*, 642 Fed. Appx. 108, 110 (3d Cir. 2016) (internal citations and quotations marks omitted).  In establishing specific jurisdiction, it is not necessary that the defendant be physically located in the forum state while committing the alleged act. *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Even a single act may satisfy the "purposeful availment" requirement if it creates a "substantial connection" with the forum. *Id.* at 476.

Here, Plaintiff argues only that it produced the underlying specialized plans requested by the ZF Defendants in New Jersey, and it was anticipated that some of the ASRS would be manufactured in New Jersey. Those allegations are insufficient to confer specific personal jurisdiction over THS. Emberton certified that as a South Carolina company, THS has never performed work in New Jersey. Indeed, based upon a liberal reading of the allegations contained in the Complaint, and Plaintiff's representations in connection with its motion for summary judgment, THS's only contacts with New Jersey are de minimis and incidental communications in connection with the negotiation of the THS Subcontract. While "[c]ommunications between parties over mail, telephone, and e-mail ... factor into a court's minimum contacts analysis," as a general rule, "'[i]nformational communications in furtherance of [a contract between a resident and a nonresident] do[ ] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant].'" *Parkway-Kew Corp. v. Harris Mach. Tools, Inc.*, No. 20-6044, 2020 WL 6375790, at *4 (D.N.J. Oct. 30, 2020) (quoting V*etrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1996)); *see also Baanyan Software Servs., Inc. v. Kuncha*, 81 A.3d 672, 679 (N.J. App. Div. 2013) ("we have held that telephonic and electronic communications with individuals and entities located in New Jersey alone, are insufficient minimum contacts to establish personal jurisdiction over a defendant."). Instead, "[i]n determining [specific] jurisdiction over a breach of contract claim," the court "must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001).

10

Here, the Complaint, as well as Plaintiff's own Statement of Undisputed Material Facts filed in connection with its Motion for Summary Judgment, demonstrate that the location and character of the THS Subcontract, the terms of the THS Subcontract, and the overall relationship between Plaintiff and THS weigh against asserting personal jurisdiction. First, THS did not solicit Plaintiff for the Project. (*See* Compl. ¶¶ 12-27.) Rather, Plaintiff's Director of Sales and Racking, John Geddes, received an unsolicited telephone call from Corey Collins, Launch Manager for ZF Transmissions, in which Collins inquired about East Coast's ability to design specialized engineering plans for the Project and East Coast's ability to fabricate and manufacture the ASRS. (Plaintiff's Statement of Undisputed Material Facts in Support of Summary Judgment ("SUMF"), at ¶ 1.) Thereafter, following a series of communication between the Plaintiff and the ZF Defendants, Plaintiff produced specialized engineering drawings, which the ZF Defendants accepted and used as the basis of the RFQ. As set forth in the Complaint, the ZF Defendants' RFQ also "informed all potential bidders that East Coast was pre-selected to design, fabricate, construct, and install the ASRS system, and required all prime contract bidders to include East Coast as its subcontractor for the design, manufacturing, and installation of the ASRS system." (Compl., ¶ 28) (emphasis added.) Thus, although the RFQ also gave bidders the option to propose an alternate subcontractor, THS did not voluntarily elect to conduct business with or seek out Plaintiff in connection with the Project. Moreover, as to any negotiations between Plaintiff and THS in connection with the THS Subcontract, THS maintains that the parties merely communicated by telephone and that no THS representatives ever visited New Jersey. In that regard, THS submits that the THS Subcontract was executed by THS in South Carolina -- a fact that is undisputed by Plaintiff. Notably, while Plaintiff implies that the work contemplated under the THS Subcontract was to be performed in New Jersey, Plaintiff performed only minimal work prior to the alleged

breach of the parties' agreement. Furthermore, nothing in the contract dictates where THS's work would be performed. In fact, Plaintiff's only work in connection with the Project included attending the "kickoff meeting" <u>in South Carolina</u>, providing the ZF Defendants with the plans for inclusion in the RFQ, and with respect to THS, specifically, taking some preliminary measurements <u>in South Carolina</u>. Tellingly, Plaintiff asserts quasi-contract claims against THS sounding in fraud based on THS's purported material misrepresentations to the ZF Defendants that Plaintiff did not possess the necessary license needed to fulfill its obligations under the THS Subcontract. (Compl., ¶¶ 101, 114.) Similar to the conduct underlying Plaintiff's alleged contract claims, the Complaint alleges that any misrepresentations, if made, originated in South Carolina, not New Jersey. For example, the Complaint alleges that THS violated the NJCFA when it "misrepresented to ZF [located in South Carolina] that East Coast did not possess the license necessary to fulfill their contractual obligations," specifically a license to design, fabricate, and/or construct an ASRS in South Carolina. (*Id.* at ¶ 101; *see also* Compl. at ¶ 62.)

Thus, I find that this Court lacks personal jurisdiction over THS.[2] After finding a lack of personal jurisdiction, the Court could dismiss under Fed. R. Civ. P. 12(b)(2); however, the Third Circuit has stated that "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020). Under 28 U.S.C. § 1631, the Court "shall, if it is in the interest of justice, transfer such action ... to any other such court ... in which the action ... could have been brought." "Transfer is generally more in the interest of justice than dismissal." *Boily v. Walt Disney World Co.*, No. 08-04967, 2009 WL 1228463, at *8 (D.N.J. May 1, 2009) (citation omitted). Dismissal is a "harsh remedy"

---

[2]     Because the Court finds that it lacks personal jurisdiction over THS, it need not determine whether it has subject matter jurisdiction.

whereas transfer is "the preferred remedy." *Konica Minolta, Inc. v. ICR Co.*, No. 15-01446, 2015 WL 9308252, at *5 (D.N.J. Dec. 22, 2015) (quoting *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 319 (D.N.J. 1998)).

THS is incorporated under the laws of South Carolina and has its corporate headquarters in South Carolina.  (*See* Compl., at ¶3; Emberton Aff. at ¶ 3.)  Therefore, it is subject to general personal jurisdiction in that state, and this action could have been brought in the District of South Carolina.  *See* 28 U.S.C. § 1391(b)(2-3) (explaining that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or ... if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action").  Accordingly, I find that transferring Plaintiff's claims against the THS to the United States District Court for the District of South Carolina, pursuant to 28 U.S.C. § 1631 is appropriate.

### B.     The ZF Defendants' Motion to Dismiss

The ZF Defendants move to dismiss Counts I, II, V, VI, VII, IX, and X of the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  In addition, the ZF Defendants submit that the remaining claims asserted against them for unjust enrichment (Count III) and quantum meruit (Count IV) should be transferred to the District of South Carolina pursuant to 28 U.S.C. § 1404(a).

While the ZF Defendants do not challenge this Court's exercise of personal jurisdiction over them, I find that transfer of the claims against the ZF Defendants, rather than severance, is appropriate after weighing both the public and private factors, which a court considers when transferring a matter pursuant to Section 1404.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873,

879-80 (3d Cir. 1995). Indeed, the Court must analyze a non-exhaustive list of private and public factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* at 879. Private interests include the plaintiff's choice of venue; the defendants' preference; where the claim arose; convenience of the witnesses; and the extent to which records or other documentary evidence would be available for production. *Id.* Public interests include the enforceability of any judgment; practical considerations that could make the trial easy, expeditious or inexpensive; relative administrative difficulty resulting from court congestion; local interest in deciding the controversy; relative importance of public policies; and familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80. The district court "is vested with a large discretion" to determine when transfer should be ordered "for the convenience of parties and witnesses, in the interest of justice." *Solomon v. Continental Amer. Life Ins.*, 472 F.2d 1043, 1045 (3d Cir. 1973) (internal quotations and citations omitted).

I find that transfer of this entire case to the District of South Carolina is appropriate, because the events giving rise to Plaintiff's claims occurred almost entirely in South Carolina, and the District of South Carolina is the only forum where all of Plaintiff's claims against all Defendants can proceed together.[3] Indeed, the lone private interest factor weighing against

---

[3] I note that THS and ZF Transmissions are at home in South Carolina, and East Coast purposefully availed itself of the benefits of conducting business in South Carolina when it visited the Project site and entered into its subcontract with THS to perform in that state. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (holding that personal jurisdiction exists where the party "made in-person contact with the resident of the forum in the forum state regarding the business relationship" and where "the performance of contractual duties was to occur within the forum."). As for ZF North America, which is not at home in South Carolina, it is likely subject to the District of South Carolina's specific personal jurisdiction in this case because it performed contractual duties for the Project within the state, and presumably consented to jurisdiction in South Carolina based on its request to transfer.

transfer is Plaintiff's choice to file their suit in New Jersey. "In this Circuit, a plaintiff's choice of forum is of 'paramount concern' in deciding a motion to transfer venue." *Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.*, 825 F. Supp. 671, 681 (D.N.J. 1993) (quoting *Sandvik, Inc. v. Cont'l Ins. Co.*, 724 F. Supp. 303, 307 (D.N.J. 1989) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)); *Shore Slurry Seal, Inc. v. CMI Corp.*, 964 F. Supp. 152, 156 (D.N.J. 1997) (same); *Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett. Ltd.*, 847 F. Supp. 1244, 1246 (D.N.J. 1994) (giving plaintiff's choice of forum "significant weight"). The choice to file in a home-state forum deserves particular deference. *See Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 629, 633 (3d Cir. 1989); *American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F. Supp. 1294, 1306 (D.N.J. 1990) [hereinafter "AT&T"] (noting "the greatly enhanced deference due to a plaintiff suing in its home state"). "[U]nless the balance is strongly tipped in favor of the defendant, the plaintiff's choice of forum should not be disturbed." *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993) (internal quotations omitted); *Lacey v. Cessna Airfract Co.*, 862 F.2d 38, 43 (3d Cir. 1988) ("[T]he plaintiff's choice of forum should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant.").

Still, Plaintiff's choice of forum is by no means "dispositive ... nor is it the only factor to be considered." *AT&T*, 736 F. Supp. at 1306. "The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *E.I. Du Pont de Nemours & Co. v. Diamond Shamrock Corp.*, 522 F. Supp. 588, 592 (D. Del. 1981). In particular, even where a plaintiff has selected a home-state forum, "deference is curbed" if the forum "has little connection with the operative facts of the lawsuit." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 521 (D.N.J. 1998); *Honeywell*, 817 F. Supp. at 481 ("When the central facts of a lawsuit occur outside the forum state, a plaintiff's section of that forum is entitled to less deference."); *Liggett Grp. Inc. v. R.J. Reynolds*

*Tobacco Co.*, 102 F. Supp. 2d 518, 530 (D.N.J. 2000) ("One situation where deference to the choice of forum is curbed is where ... the choice of forum ... has little connection to the operative facts."); *In re Consolidated Parlodel Litigation*, 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998) ("The plaintiff's interest decreases even further where the central facts of a lawsuit occur outside the chosen forum.") (internal quotations omitted); *Nat'l Property Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995) ("When the central facts of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight."). Indeed, to decide a transfer motion on plaintiff's choice of forum alone would "collapse any difference between [S]ections 1404 and 1406." *Security Sav. Bank, SLA v. Green Tree Acceptance, Inc.*, 703 F. Supp. 350, 353 (D.N.J. 1989) (internal quotations omitted); *Shell Oil*, 917 F. Supp. at 327 ("Plaintiff's choice of forum is not accorded the decisive weight [it] enjoys under forum non conveniens."). Moreover, because the "determination of how much weight each factor should be given in the transfer analysis is [itself] discretionary," *see Franklin U.S. Risking Dividends Fund v. American Intern. Group, Inc.*, No. 13-05805, 2014 WL 1555133, at *4 (D.N.J. April 14, 2014), *aff'd*, 2014 WL 3748214, at *3, courts have implicit authority under *Jumara* to disregard a plaintiff's chosen forum if "all relevant factors" indicate that "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879.

Although Plaintiff, here, chose to file its suit in New Jersey rather than South Carolina, sufficient countervailing private and public interests exist to overcome "the presumption in favor of [that] choice." *Shore*, 964 F. Supp at 156; *Tischio*, 16 F. Supp. 2d at 521; *Lacey*, 862 F.2d at 45; *Shell Oil*, 917 F. Supp. at 327; *Honeywell*, 817 F. Supp. at 480. Put simply, Plaintiff cannot avoid the fact that THS and ZF Transmissions are residents of South Carolina, that this Court does not have personal jurisdiction over THS, and that all claims asserted in this action arise from conduct

occurring predominantly in South Carolina. *See Tischio*, 16 F. Supp. 2d at 521 (overriding plaintiff's choice of forum because "[t]he Complaint demonstrates the events giving rise to the instant action ... occurred predominantly, if not entirely, in Virginia"); *Andrews v. Norfolk Southern Corp.*, No. 07-1131, 2008 WL 687255, at *3 (D.N.J. Mar. 4, 2008) (overriding plaintiff's choice of forum because "[s]trongest among [the private interest factors] is that the claim arose elsewhere"). Indeed, South Carolina "contains the center of gravity of the dispute, its events, and transactions." *Park Inn Int'l, L.L.C. v. Mody Enterprises*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000).

To be sure, Plaintiff asserts contractual and quasi-contractual claims against the ZF Defendants that arise out of a construction project at the ZF Defendants' manufacturing facility in South Carolina, not New Jersey. Specifically, Plaintiff alleges that it agreed to design, fabricate, manufacture, and install the components of the ZF Defendants' expanded ASRS. According to the Complaint, however, Plaintiff only completed the design aspect of its agreement with the ZF Defendants prior to any wrongful conduct allegedly committed by the ZF Defendants. And, although Plaintiff alleges that it designed the ASRS in New Jersey, the Court finds that conduct to be relatively minor when considering the totality of Plaintiff's relationship with the ZF Defendants, including the scope of the parties' alleged agreement and the work allegedly anticipated by Plaintiff on the Project. Moreover, while Plaintiff represents in its briefing that but for THS's misrepresentations, which led to Plaintiff's removal from the Project, the ASRS was to be fabricated in New Jersey, this fact does not tip the scales in favor of this District retaining venue. Indeed, it is undeniable that any installation of the ASRS, if undertaken, would have been performed in South Carolina.

In addition, the remaining private and public interest factors, such as the convenience of the parties and witnesses, the location of books and records, the enforceability of judgments, and

the states' interests either weigh in favor of transfer or are neutral.  For instance, both transfer and retaining the lawsuit will require one side to travel to another state to litigate the lawsuit and the location of documentary or paper evidence is likewise neutral.[4]  With respect to documentary or paper evidence, they could be subpoenaed and transmitted to either venue.  *See Andrews*, 2008 WL 687255, at *3 ("[T]he fact that [relevant] documents could be easily transferred ... does not weigh heavily against transfer."); *Franklin*, 2014 WL 1555133, at *9 ("Ultimately, the parties have not submitted any evidence that the transportation of documents to either forum would be unduly burdensome or expensive."); *see also Trilegiant Loyalty Solutions, Inc. v. Maritz*, No. 04-360, 2005 WL 441077, at *2 (D. Del. Feb. 15, 2005) (implying that the location of books and records does not cut either way when they could be produced in either venue); *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 810 (D. Del. 2011) (noting that "technology [may] make[ ] the physical location of documents relatively unimportant").

Finally, and most importantly, because the Court lacks personal jurisdiction over THS, and South Carolina appears to be the only other court that could conceivably have jurisdiction over this defendant based on the factual allegations in the Complaint, transfer would promote judicial economy and avoid piecemeal litigation.  In that regard, I find that the interest of judicial economy would be better served by litigating, in one forum, all of Plaintiff's claims against Defendants,

---

[4]     The Court also notes that while "relative congestion ... is not a factor of great importance" on a transfer motion, it nonetheless supports transfer in this case. *Kisko v. Penn. Cent. Transp., Co.*, 408 F. Supp. 984, 987 (M.D. Pa. 1976); *Andrews*, 2008 WL 687255, at *4 ("[T]his Court does not grant the relative caseload of different districts great importance.").  Notably, conflicting data will not "tip the balance" for either party, nor will statistical evidence indicating one venue is more congested than another if "the reality is that [both venues] are [ ] busy districts." *Eastman v. First Data Corp.*, No. 10-5860, 2011 WL 1327707, at *5 (D.N.J. April 5, 2011).  That said, although neither Plaintiff nor Defendants provide statistical evidence comparing the District of New Jersey's caseload with that of the District of South Carolina, it is beyond dispute that this District is significantly busier than the District of South Carolina.

which are intertwined, and all relate to work in connection with a single construction project in South Carolina. Significantly, the Third Circuit has cautioned against granting severance "if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994); *see also Dao v. Knightsbridge Int'l Reinsurance Corp.*, 15 F. Supp. 2d 567, 576 (D.N.J. 1998) ("The sever and transfer procedure is discretionary, but is not likely to be appropriate where the partial transfer would require the same issues to be litigated in two places.").

Accordingly, on balance, the Court finds that the private and public interest factors favor transfer, and this suit is transferred to the District of South Carolina pursuant to 28 USC § 1404(a). Instead of Plaintiff litigating this lawsuit piecemeal in two separate forums, I exercise my discretion to transfer the entire matter to the District of South Carolina, where there is jurisdiction over all Defendants, without ruling on the ZF Defendants' motion to dismiss or Plaintiff's motion for summary judgment. The ZF Defendants and Plaintiff may renew their motions in the transferee court, if appropriate.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, THS's Motion to Dismiss for lack of personal jurisdiction (ECF No. 9) is **GRANTED** and this case is transferred to the United States District Court for the District of South Carolina. The ZF Defendants' Motion to Dismiss (ECF No. 14), pursuant to Fed. R. Civ. P. 12(b)(6), and Plaintiff's Motion for Summary Judgment (ECF No. 18), pursuant to Fed. R. Civ. P. 56, are **DENIED** without prejudice, with the right to refile such motions in the transferee court.

Dated: May 26, 2021                              /s/ Freda L. Wolfson
                                                 Freda L. Wolfson
                                                 U.S. Chief District Judge